Richard L. Stacey, ISB #6800
Joe Meuleman, ISB #8029
MEULEMAN MOLLERUP LLP
755 West Front Street, Suite 200
Boise, Idaho 83702
Telephone:  (208) 342-6066
Facsimile:   (208) 336-9712
stacey@lawidaho.com
jmeuleman@lawidaho.com
I:\6994.003\PLD\IDAHO\COMPLAINT 140602.DOC

Attorneys For Plaintiff Peck Ormsby Construction Company

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PECK ORMSBY CONSTRUCTION COMPANY, a Utah corporation,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>PARKSON CORPORATION, a Delaware corporation,<br><br>　　　　Defendant. | Case No.<br><br><br>**COMPLAINT** |

**COMES NOW** Plaintiff Peck Ormsby Construction Company, by and through its counsel of record, Meuleman Mollerup LLP, and for its complaint against Defendant Parkson Corporation does state and allege as follows:

## JURISDICTION

1.　　　Jurisdiction of this Court is based upon and conferred by 28 U.S.C. § 1332 because complete diversity exists and the amount in controversy is more than Seventy-Five Thousand Dollars

**COMPLAINT - Page 1**

($75,000.00).

**PARTIES**

2.  Plaintiff Peck Ormsby Construction Company ("Plaintiff" or "POCC") is, and at all times material hereto was, a Utah corporation in goodstanding, with its principal place of business in the State of Utah and is authorized to do business in Idaho.

3.  Defendant Parkson Corporation ("Defendant" or "Parkson") is, and at all times material hereto was, a Delaware corporation in goodstanding, with its principal place of business in the State of Florida.

4.  The agreements herein after referred to were made and were to be performed within the territorial jurisdiction of this Court.

**GENERAL ALLEGATIONS**

5.  On or about April 17, 2006, the City of Rigby ("Rigby") hired Keller as engineer for the construction of a wastewater treatment plant ("Project") in Rigby, Idaho.

6.  Keller provided Parkson with certain Project specifications for review in March 2007.

7.  On or about November 14, 2007, Rigby issued an "Advertisement For Bids" for the construction of the Project.

8.  Parkson sent POCC its quotation and standard conditions (collectively, "Quotation and Conditions") dated December 14, 2007, to provide the Cloth Filtration Equipment for the Project.

9.  Pursuant to the Quotation and Conditions, Parkson agreed to provide Cloth Filtration Equipment in compliance with the terms of the Project Specifications.

10. The Project specifications ("Specifications") called for a cloth filtration system ("Cloth Filtration Equipment") manufactured by either Aqua-Aerobic Systems, Inc. or Parkson.

11. On or about December 20, 2007, POCC submitted its bid form ("Bid") for the Project in accordance with the bid documents for the Project.

12. Based on representations in Parkson's Quotation and Conditions, POCC named Parkson as the Cloth Filtration Equipment manufacturer in its Bid.

13. In or about January 2008, Rigby and POCC entered into an agreement ("Prime Contract"), whereby POCC agreed to construct the Project.

14. In response to the Quotation and Conditions, and without knowledge that Parkson was still in the process of designing and manufacturing the Cloth Filtration Equipment for the first time, POCC issued Supplier Purchase Order No. 835-11520 dated February 6, 2008 ("Purchase Order") to Parkson.

15. Parkson's Contracts Manager executed the Purchase Order with a stamp stating "[a]s per Letter of Acknowledgement dated 4/29/08 attached."

16. Parkson's Letter of Acknowledgment dated April 29, 2008 ("Acknowledgment") states: "The Purchase Order is accepted per the terms of this Letter Agreement."

17. The Quotation and Conditions, the Purchase Order and the Acknowledgment are hereinafter referred to collectively as the "Cloth Filter Purchase Agreement."

18. The Cloth Filter Purchase Agreement requires that Parkson defend POCC from any and all claims, suits, losses or liability, including attorney's fees and litigation expenses, for or on account of any breach of the Cloth Filter Purchase Agreement or regulation.

19. Keller rejected Parkson's first submittal package dated April 18, 2008 for various reasons, including Parkson's failure to show that the Cloth Filtration Equipment could meet the performance and design parameters required by the Project Specifications.

20. Parkson's re-submittal package dated July 10, 2008, included a performance guarantee guaranteeing that the Cloth Filtration Equipment would comply with the Performance and Design Parameters of Specification Section 11520.

21. Parkson worked directly with Keller for approval of Parkson's hydraulic calculations that were necessary to ensure that the Cloth Filtration Equipment complied with the hydraulic design for the entire Project.

22. On or about July 30, 2008, Keller rejected Parkson's re-submittal package for various reasons, including Parkson's failure to indicate the pore size of the cloth media filter for the Cloth Filtration System.

23. Parkson worked directly with Keller for approval of the filter cloth.

24. On August 15, 2008, Keller marked Parkson's re-submittal package "no exceptions taken."

25. Parkson continued design changes to the Cloth Filtration Equipment even after Keller marked its re-submittal package no exceptions taken.

26. Parkson failed to timely provide POCC the IO&M Manual in accordance with the Cloth Filter Purchase Agreement. Nonetheless, POCC properly installed the Cloth Filtration Equipment in accordance with the Parkson submittal instructions and the Project plans and specifications as modified by Rigby and Keller during the course of construction.

27. Parkson's Cloth Filtration Equipment failed Keller's start-up test in August 2009.

28. With the exception of Parkson's Cloth Filtration Equipment, POCC substantially completed its work on the Project in August 2009.

29. On or about August 28, 2009, POCC notified Parkson of Rigby's refusal to pay POCC the balance of the Prime Contract in the amount of $434,555.00 based solely on the performance of Parkson's Cloth Filtration Equipment.

30. Keller sent POCC a letter dated September 9, 2009, giving notice in writing that Parkson's Cloth Filtration Equipment did not meet the performance requirements in the Specifications.

31. On or about September 10, 2009, POCC forwarded Keller's September 9th letter to Parkson and gave Parkson notice that "[a]ll costs associated with the filter problems charged to Peck Ormsby will be passed on to Parkson."

32. Parkson and its sales representative met with Keller on September 15, 2009 to request an extension of time to modify the Cloth Filtration Equipment in an attempt to meet the performance requirements in the Specifications.

33. On or about October 20, 2009, Parkson sent POCC a letter acknowledging problems with the Cloth Filtration Equipment and advising of Parkson's commitment to correct these problems. Parkson states in said letter that it can complete all necessary corrective work within a six (6) week extension period granted by Rigby.

34. From September 2009 through March 2010, Parkson performed various modifications to its Cloth Filtration Equipment. However, the Cloth Filtration Equipment still did not comply with the specified performance criteria.

35. On or about April 9, 2010, POCC and Parkson executed a change order to the Cloth Filter Purchase Agreement ("Amendment No. 1") allowing Parkson additional time to complete its modifications to the Cloth Filtration Equipment and additional contractual requirements to ensure performance of the Cloth Filtration Equipment.

36. POCC and Rigby entered into a change order amending the Prime Contract to extend POCC's completion date to allow additional time for Parkson's Cloth Filtration Equipment to meet the Specifications.

37. On or about June 11, 2010, Parkson completed the Phase One testing of the Cloth Filtration Equipment under Amendment No. 1. The Cloth Filtration Equipment failed to comply with the Specifications during the Phase One test.

38. On or about June 22, 2010, Rigby stopped Phase Two testing of the Cloth Filtration Equipment under Amendment No. 1 because the Cloth Filtration Equipment failed to meet the Specifications.

39. On or about July 20, 2010, Keller rejected Parkson's Cloth Filtration Equipment for its repeated failure to comply with the Specifications and the testing requirements.

40. POCC filed a lawsuit against Rigby and Parkson in the United States District Court for the District of Idaho on November 5, 2010.

41. On December 29, 2010, counsel for POCC tendered defense of Rigby's claims to Parkson's attorney in accordance with the terms of the Cloth Filter Purchase Agreement.

42. On January 10, 2011, Rigby filed its Counterclaim against POCC ("Counterclaim").

43. Although Parkson refused to accept POCC's tender of defense of Rigby's claims against POCC, it agreed to assist POCC in defending the technical aspects of Rigby's claims.

44. On July 8, 2011, Parkson filed a motion to compel arbitration of Rigby's claims against Parkson ("Compel Motion").

45. The trial court denied Parkson's Compel Motion, and its motion for reconsideration of the Compel Motion.

**COMPLAINT - Page 6**

46. On December 7, 2011, Parkson appealed the trial court's denial of the Compel Motion to the Ninth Circuit Court of Appeals.

47. POCC, Parkson and Rigby stipulated to continue the trial due to Parkson's pending appeal. This stipulation was based on the agreement that discovery had closed and the dispositive motion deadline had passed.

48. The Ninth Circuit reversed the trial court's denial of the Compel Motion on May 20, 2013.

49. Based on the Ninth Circuit decision, the trial court ordered Rigby to arbitrate its claims against Parkson.

50. After the Ninth Circuit decision, Parkson refused to provide its employees to testify at trial and otherwise defend POCC against Rigby's claims unless POCC would waive its indemnity rights under the Cloth Filter Purchase Agreement.

51. POCC again tendered the defense of Rigby's claims and "vouched-in" Parkson so that Parkson's failure to defend would bind Parkson to any factual determinations at trial.

52. Notwithstanding POCC's second tender of defense, Parkson refused to defend POCC against Rigby's claims.

53. POCC again demanded Parkson's defense and Parkson refused.

54. POCC and Rigby scheduled a second mediation for December 18, 2013, in an attempt to resolve the dispute regarding Parkson's Cloth Filtration Equipment.

55. POCC invited Parkson to participate in the mediation, but Parkson declined.

56. POCC and Rigby settled their dispute at the mediation and agreed to dismiss their claims against each other in exchange for Rigby releasing the balance of the Prime Contract and POCC paying Rigby $147,800.00.

**COMPLAINT - Page 7**

## FIRST CAUSE OF ACTION
### (Breach Of Contract)

57. POCC repeats herein by this reference Paragraphs 1 through 56, inclusive, as if said paragraphs were set forth hereat in full.

58. POCC has performed all its obligations under the Cloth Filter Purchase Agreement, except as the same have been excused, waived and/or prevented by Parkson.

59. Parkson breached the Cloth Filter Purchase Agreement by, *inter alia,* failing to supply the Cloth Filtration Equipment in accordance with the Project Specifications.

60. Due to Parkson's breach of the Cloth Filter Purchase Agreement, POCC has been damaged in an amount to be proven at trial, but no less than $75,000.00, plus interest thereon at the maximum rate allowed by law.

## SECOND CAUSE OF ACTION
### (Breach of Duty to Defend)

61. POCC repeats herein by this reference Paragraphs 1 through 60, inclusive, as if said paragraphs were set forth hereat in full.

62. Rigby's Counterclaim alleged POCC breached the Prime Contract because it failed to furnish the Cloth Filtration Equipment in compliance with the Project Specifications.

63. POCC has tendered defense of Rigby's claims to Parkson no less than three times beginning December 29, 2010.

64. Parkson breached its duty to defend because it refused to defend POCC against Rigby's Counterclaim.

65. Due to Parkson's aforementioned breach of its duty to defend POCC, POCC has been damaged in an amount to be proven at trial, but no less than $75,000.00, plus interest thereon at the maximum rate allowed by law.

## ATTORNEYS' FEES AND COSTS

POCC has been required to retain the services of an attorney to bring this suit and is entitled to an award of reasonable attorneys' fees incurred pursuant to, *inter alia*, the Cloth Filter Purchase Agreement and Idaho Code §§ 12-120 and 12-121.

## PRAYER FOR RELIEF

**WHEREFORE,** POCC prays for judgment against Parkson as follows:

A.  As to the First Cause of Action:

    i.  For the principal sum of no less than $75,000.00, together with interest thereon at the maximum rate allowed by law;

    ii.  For reasonable attorneys' fees;

    iii.  For costs of suit herein; and

    iv.  For such other and further relief as the Court deems just and proper.

B.  As to the Second Cause of Action:

    i.  For the principal sum of no less than $75,000.00, together with interest thereon at the maximum rate allowed by law;

    ii.  For reasonable attorneys' fees;

    iii.  For costs of suit herein; and

    iv.  For such other and further relief as the Court deems just and proper.

**DATED** this 9th day of June 2014.

              MEULEMAN MOLLERUP LLP

              BY:      /s/ Joe Meuleman
                        Joe Meuleman
                        Attorneys For Plaintiff